1
2
3
4
5
6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7
8   UNITED STATES OF AMERICA,

9        Plaintiff,

10       v.

11  DANIEL R. BLACK, *et al.*,

12       Defendants.

13

NO.  CV-07-355-RHW

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT**

14       Before the Court are Plaintiff's Motion for Summary Judgment (Ct. Rec.

15  121); Defendant Hope Springs Corporation Sole's Motion for Summary Judgment

16  (Ct. Rec. 129); and the Black Defendants' Motion for Summary Judgment (Ct.

17  Rec. 133).  The motions were heard without oral argument.

18       The United States commenced this action on November 2, 2007, in order to

19  reduce to judgment federal income tax assessments against Defendants Daniel R.

20  Black and Maire E. Black, and to foreclose federal tax liens against the following

21  Subject Properties:

22       **(1) Parcel A**

23       Parcel A is a 160-acre parcel identified by Chelan County Tax #272201-

24  100000.  The address for Parcel A is 56 Union Valley Loop Road, Chelan,

25  Washington.  The legal description of Parcel A is as follows:

26       Lots 1 and 2 and the South half of the Northeast quarter; and the
         Northwest quarter of the Southeast quarter of Section 1, Township 27
27       North, range 22 East of the Willamette Meridian.

28

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 1**

1

**(2) Parcel B**

2    Parcel B is a 27-acre parcel identified by Chelan County Tax #272201-

3  230025.  A mobile home permanently affixed to the land is located on this

4  property.  The legal description of Parcel B is as follows:

5        The Southwest quarter of the Northwest quarter and that portion of
      Government Lot 4, lying South of Union Valley Road # 38 right of
6        way in Section 1, Township 27 North, Range 22, E.W.M. Chelan
      County, Washington; except the East 575 feet thereof.

7

8    **(3) Parcel C**

9    Parcel C is an 8-acre parcel identified by Chelan County Tax # 272201-

10  200050.  Parcel C is commonly known as both 56 Valley Loop Road, Chelan,

11  Washington, and 96 Valley Loop Road, Chelan, Washington.  The legal

12  description of Parcel C is as follows:

13        Beginning at the Southwest corner of the Northwest quarter of the
      Southeast quarter of Section 1, Township 27 North, range 22 East of
14        the Willamette Meridian; thence North to the Northwest corner of the
      Northeast quarter of said Section 1; thence West 60 feet; thence South
15        980 feet; thence Southwesterly to a point 174 feet West of a point 320
      feet South; thence South 50 feet; thence Southwesterly to a point of
16        127 feet East of a point 180 feet South; thence South to the South line
      of the Northeast quarter of the Southwest quarter of the above
17        described in Section 1; thence East 60 feet to the point of beginning.
      Except right of way for the Union Valley Loop Road.

18

19    **(4) Parcel D**

20    Parcel D is a 20-acre parcel identified by Chelan County Tax # 272201-

21  42000 and referred to as orchard property.   The legal description of Parcel D is as

22  follows:

23        The North half of the Northwest quarter of the Southeast quarter of
      Section 1, Township 27 North, Range 22 East of the Willamette
24        Meridian.

25    Defendants Daniel and Maire Black maintain that they are not taxpayers and

26  have no obligation to pay income taxes.  From 1981 to 2000, Daniel Black did not

27  file any income tax returns.  Sometime prior to 1981, the Blacks formed Summer

28

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT
HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 2**

Hill Freedom Trust.  Maire Black served as trustee for Summer Hill Freedom Trust from the time of its creation throughout its existence.  Bill Shoenmaker was also a Trustee during this entire time.  Sometime prior to 1981, the Blacks also formed B.C. Trust.  Maire Black served as a trustee for B.C. Trust from the time of its creation throughout its existence.  Bill Shoenmaker was also a Trustee during this entire time.

In 1981, Summer Hill Freedom Trust entered into a contract to acquire Parcels A, C, and D.  These parcels are contiguous parcels of land.  The purchasing contract was signed by Daniel and Maire Black as Trustees.  The Blacks reside in a home located on the real property purchased in the name of Summer Hill Freedom Trust.  They have resided in this home, on this property, since 1981.  The Blacks' daughter and son-in-law live on a mobile home situated on one of the parcels, for which they pay rent.

In 1989, Maire Black and Bill Shoenmaker, acting as Trustees for B.C. Trust, purchased Parcel B by warranty deed.  The Blacks operate an engineering business on Parcel B.  This business was originally known as Techni-Systems Trust, but is now operating under the name of Techni-Systems, LLC.  Technic-Systems Trust was controlled by trustee Maire Black.  A caretaker lives in a mobile home on Parcel B, next to the office building.  The caretaker is not compensated for his caretaker duties and does not pay rent.

In March, 1999, the Internal Revenue Service filed Notices of Federal Tax Lien against the Blacks.  On June 4, 1999, the Blacks created Hope Springs, Corporation Sole.  At the time of Hope Springs' creation, Daniel Black was serving as overseer.  He held this position until March, 2009.  During this time, he had complete authority over all aspects of Hope Springs.  Since its creation, Hope Springs has held office space in the Blacks' residence.

On June 9, 1999, Maire Black, as Trustee for Summer Hill Freedom Trust,

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 3**

transferred all its assets–Parcels A, C, and D–to Hope Springs, Corporation Sole by quit claim deed, for no consideration.  Bill Schoenmaker did not sign the quit claim deed.        On that same day, Maire Black, as Trustee for B.C. Trust, transferred all its assets–Parcel B–to Hope Springs, Corporation Sole by quit claim deed, for no consideration.  No one moved on or off the property as a result of the transfer. The engineering business–Techni-Systems Trust–was also unaffected.

Summer Hill Freedom Trust made no payments toward the purchase price of Parcels A, C, and D since 1981, but had made payments toward interest.

In 2000, the Blacks created Summerhill Supply, LLC.  Summerhill Supply, LLC began leasing Parcels A, B,C, and D from Hope Springs in 2001.  Summerhill Supply is completely controlled by Daniel and Maire Black, who serve as managers.  They receive $500 annually as compensation for the duties they perform as managers.  Also in 2000, the Blacks created Techni-Systems, LLC to replace Techni-Systems Trust.  Shortly after its formation, Techni-Systems, LLC began leasing property from Summerhill Supply, LLC.  Techni-Systems, LLC is controlled by manager Daniel Black.  He receives $500 annually as compensation for his role as manager.  Technic-Systems, LLC is virtually identical to Technical-Systems Trust.

*Summary of Transfers and Leases for Parcel A, C, and D*

| Date | Action |
| --- | --- |
| 1981 | Summerhill Freedom Trust entered into contract to purchase |
| March, 1999 | Notice of Federal Tax Lien filed |
| June 9, 1999 | Summerhill Freedom Trust transferred parcels to Hope Springs, Corporation Sole |
| 2001 | Summerhill Supply, LLC leased parcels from Hope Springs |

*Summary of Transfers and Leases for Parcel B*

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 4**

| Date | Action |
|------|--------|
| 1999 | B.C. Trust purchased parcel by warranty deed |
| March, 1999 | Notice of Federal Tax Lien filed |
| June 9, 1999 | B.C. Trust transferred parcels to Hope Springs, Corporation Sole |
| 2001 | Summerhill Supply, LLC leased parcels from Hope Springs |
| 2001 | Techni-Systems leased parcels from Summerhill Supply, LLC |

Throughout all these property transfers, leases, and sub-leases, the Blacks continue to live on the property. They run their engineering business out of the property and also operate an orchard on part of the land. They pay no rent.

In March 2009, Daniel Black transferred the title of overseer of Hope Springs to Greg Hanks. Mr. Hanks was given no ledger or bank records for Hope Springs when he assumed the title of overseer, and had no knowledge of Hope Springs' affairs prior to his appointment as overseer. There is no evidence that Hope Springs has ever interfered with the Blacks' use of the property. The Blacks own no assets whatsoever. They have not held property in their own names since 1981.

*Summary of Tax Assessments against Defendant Daniel R. Black*

Beginning in 1998, a delegate of the Secretary of the Treasury made assessments of federal income taxes, penalties and interest, and other statutory additions against Defendant Daniel R. Black on the dates, in the amounts, and for the taxable periods set forth below:

| Tax Year | Assessment Date | Amount Assessed | Total, including assessed penalties & interest, as of 6/1/2010 |
|----------|-----------------|-----------------|----------------------------------------------------------------|
| 1987 | 1/12/98 | $944.22 | $1,137.58 |
| 1993 | 1/12/98 | $23,946.40 | $332,046.75 |
| 1994 | 1/12/98 | $198,133.00 | $611,126.50 |
| 1995 | 1/12/98 8/12/02 | $153,623.00 | $437,054.16 |
| | | Total | $1,381,364.99 |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 5**

*Summary of Tax Assessments against Defendant Maire E. Black*

Beginning in 1998, a delegate of the Secretary of the Treasury made assessments of federal income taxes, penalties and interest, and other statutory additions against Defendant Maire E. Black on the dates, in the amounts, and for the taxable periods set forth below:

| Tax Year | Assessment Date | Amount Assessed | Total, including assessed penalties & interest, as of 6/1/2010 |
|---|---|---|---|
| 1989 | 1/5/98 | $1,075.00 | $1,502.31 |
| 1993 | 1/5/98 | $81,331.15 | $351,702.86 |
| 1994 | 1/5/98 | $169,969.00 | $522,796.42 |
| 1995 | 1/5/98 8/12/02 | $129,770.50 | $368,021.81 |
| | | Total | $1,244,023.40 |

*Summary of Tax Assessments against Defendants Daniel R. Black and Maire E. Black*

Beginning in 2001, a delegate of the Secretary of the Treasury made assessments of federal income taxes, penalties and interest, and other statutory additions against Defendants Daniel R. Black and Maire E. Black on the dates, in the amounts, and for the taxable periods set forth below:

| Tax Year | Assessment Date | Amount Assessed | Total, including assessed penalties & interest, as of 6/1/2010 |
|---|---|---|---|
| 1996 | 3/19/01 8/12/02 | $392,402.17 | $1,030,587.11 |
| 1997 | 3/26/01 8/12/02 | $264,508.07 | $639,274.67 |
| 1998 | 4/2/01 8/12/02 | $407,488.77 | $919,291.86 |
| 1999 | 3/05/01 8/12/02 | $224,353.90 | $459,004.15 |
| | | Total | $3,048,157.79 |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 6**

These assessments have resulted in the creation of federal tax liens upon all property and rights to property belonging to the Blacks. The Chelan County Auditor recorded a Notice of Federal Tax Lien with respect to the assessments in Chelan County, as follows:

| Date | Notice Filed Against | Tax Years |
|------|---------------------|-----------|
| 3/17/1999 | Daniel R. Black | 1987, 1993, 1994, and 1995 |
| 3/17/1999 | Maire E. Black | 1989, 1993, 1994, and 1995 |
| 8/22/2002 | Daniel R. Black and Maire E. Black | 1996, 1997, 1998, and 1999 |
| 10/24/2000 | B.C. Trust, Summer Hill Freedom Trust, and Hope Springs Corporation Sole , as nominees of Daniel R. Black | 1987, 1993, 1994, and 1995 |
| 10/24/2000 | B.C. Trust, Summer Hill Freedom Trust, and Hope Springs Corporation Sole , as nominees of Maire E. Black | 1989, 1993, 1994, and 1995 |
| 8/22/2002 | Hope Springs Corporation Sole, as nominee of Daniel R. Black and Maire E. Black | 1996, 1997, 1998, and 1999 |

On June 12, 2009, the Court entered an Order whereby it determined that by default B.C. Trust and Summer Hill Freedom Trust were the nominees and/or alter egos of Daniel and Maire Black (Ct. Rec. 63). It specifically ruled that to the extent that B.C. Trust and Summer Hill Freedom Trust purported to hold title to the subject property, it did so as the nominee and/or alter ego of Daniel and Maire Black. *Id.*

### STANDARD OF REVIEW

Plaintiff, Defendant Hope Springs, Corporation Sole, and the Black Defendants all move for summary judgment. Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 7**

Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). The moving party has the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson,* 477 U.S. at 248.

In addition to showing that there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School,* 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex,* 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## MOTIONS FOR SUMMARY JUDGMENT

Each party has filed a motion and has asserted various arguments in support of their positions. The positions are somewhat inter-related. At the crux of the issue is whether the Hope Springs Corporation Sole is the nominee or alter ego of the Black Defendants. Defendants also challenge the Court's jurisdiction to hear this matter. Below is a summary of the positions of the respective parties' with regard to their motions for summary judgment.

### 1.    Plaintiff's Motion for Summary Judgment

Plaintiff argues that it has satisfied its initial burden of proving the valid tax

assessments.  It also asserts that Hope Springs is merely the Blacks' nominee or alter ego and the Blacks are the true beneficial owners of the properties.  As such, the tax liens can be enforced against the properties owned by Hope Springs just as though the Blacks were the record title holders.  Plaintiff asks the Court to set aside the purported conveyances of the property between Summerhill Freedom Trust and Hope Springs Corporation based on the fact that those transfers were fraudulent.  Finally, Plaintiff asks the Court to foreclose the federal tax liens as to Parcels A, B, C, and D (Subject Properties).

### 2.    The Black Defendants' Motion for Summary Judgment

The Black Defendants assert that any Internal Revenue debts were discharged in their 2001 Chapter 7 bankruptcy proceedings, due to the fact that at no time during the proceedings did the Internal Revenue Service file an appearance as a creditor or make any appearance at any creditor's meetings, made no attempt to oppose their petition, and made no effort to set aside the final judgment.

Defendants maintain that at no time during the tax years alleged did they voluntarily elect to operate through any legal form of organization that would have vested the Internal Revenue Service with lawful jurisdiction to impose and assess any federal income tax.  Specifically, Defendants maintain that the Internal Revenue Service reliance on 26 U.S.C. § 7401 is misplaced because the implementing regulation to that section relates to Alcohol, Tobacco, and Firearms related activities and they never were engaged in such activities.

Defendants assert that the Notice of Assessment and Demand were defective as they were not prepared on Form 17, as required by Treasury Decision 1995.

Defendants also assert that the tax assessments are merely 'naked assessments" which are void as a matter of law and constitute only self-serving declarations.

Defendants allege that the Internal Revenue Service knowingly prepared

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 9**

false entries on Defendants' Individual Master File for the purpose of creating a legal fiction to facilitate the preparation of false assessments, and false Federal Tax liens.

Defendants maintain that they have never purchased an interest in or conveyed an interest in the parcels.  Specifically, they argue that they have never appeared as owners in the chain-of-title to the parcels.  Also, they assert that the court is without subject matter jurisdiction to attribute ownership to the Defendants when the public record, which is conclusive evidence, clearly establishes the Defendants have never enjoyed an ownership interest in the parcels.

>   **3.    Defendant Hope Springs Corporation Sole's Motion for Summary Judgment**

Defendant Hope Springs Corporation Sole asserts that it acquired the parcels by purchase for value.  It is the bona fide purchaser for value of Parcels A, C, and D, by assuming the debt of the previous property owner.  It argues that the public record in Chelan County is conclusive evidence of title ownership and because the Black Defendants never appear in the chain-of-title, Plaintiff is without legal authority to lien the real property owned by Defendant Hope Springs.  Defendant asserts that it is not a mere nominee of Daniel R. Black and Maire E. Black, and it is entitled to equitable subrogation and is the first-position lien holder for parcels A, C, and D.  Defendant seeks attorneys' fees against Plaintiff, asserting that Plaintiff's claim against Defendant Hope Springs is unreasonable and without foundation.  Additionally, Defendant Hope Springs challenges the failure of the Internal Revenue Service to prepare and serve written notice notifying Defendant Hope Springs Corporation Sole of the existence of any federal tax liens and notice of collections due process hearing.

Defendant Hope Springs also asserts that the tax lien against the parcels are void because it is a tax-exempt entity and asserts that Plaintiff's action is time-

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 10**

1   barred.  Finally, Defendant argues that because Plaintiff has failed to adequately
2   plead supplemental jurisdiction, allegations referencing Washington law is a
3   nullity.

4                   CHALLENGES TO THE COURT'S JURISDICTION

5        Defendants have asserted various challenges to the Court's jurisdiction over
6   this action.  Each of these arguments will be addressed.

7        The Black Defendants argue that the Court lacks jurisdiction because the
8   taxes at issue are "direct taxes without apportionment."  This argument is frivolous.
9   *See In re Becraft*, 885 F.2d 547, 548 (9th Cir. 1989) ("We hardly need comment on
10  the patent absurdity and frivolity of such a proposition [that direct nonapportioned
11  income taxes are unconstitutional].").  They argue that the Court lacks jurisdiction
12  because the taxes at issue are "not indirect taxes in the nature of an excise."  This
13  argument is also frivolous.  *See Philips v. C.I.R.*, 1996 WL 593497 (9th Cir. 1996).
14  Their argument that they are immune from taxation because they did not engage in
15  "alcohol, tobacco and firearms activities" during the years in question is frivolous.
16  *See Walter v. I.R.S.,*, 1994 WL 760812 (E.D. Cal. 1994).

17       It is not necessary that the notice of demand letters be sent on Form 17.  *See
18  Hanson v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (per curiam).  An IRS
19  Form 5340 is admissible evidence and sufficient proof that notice of deficiency
20  was properly served and assessment of deficiency properly made.  *Id.*  The Black
21  Defendants allegation that the Internal Revenue Service knowingly prepared false
22  entries on the Blacks' Individual Master File is a conclusory argument that is not
23  supported by the record.  Notably, the Black Defendants have failed to identify any
24  specific alleged inaccuracy.

25       *Naked Assessments*

26       Defendants argue that the United States is relying upon "naked assessments"
27  to support its claims.  The Court disagrees.  Rather, the Government has introduced

28
**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT
HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 11**

1  substantive evidence that the Blacks received unreported income.  According to the

2  Declaration of Alfred Ramos, the IRS determined the Blacks' income for the 1987,

3  1993, 1994, and 1995 tax years by analyzing bank deposits for the various trusts

4  Daniel Black controlled, as well as a evaluation of real estate transactions entered

5  into by one of those trusts.  The income determined by the IRS for the years 1993,

6  1994, and 1995 tax years was very similar to, or lower than, the income reported

7  by the Blacks in joint tax returns they submitted for 1993, 1994, and 1995, in 2000.

8  A Notice of Deficiency was prepared and issued to the Blacks, and no petition was

9  filed with the Tax Court within the 90-day statutory period for challenging the

10  IRS's determination prior to assessment.   The Government has established that the

11  Blacks' individual assessments were based on well-founded determinations, many

12  of which were subsequently confirmed by tax returns submitted by the Blacks, and

13  the Blacks' joint assessments were based on information provided in tax returns

14  submitted by the Blacks.

15          *Discharge in Bankruptcy*

16          The Black Defendants argue that their tax liabilities were discharged in their

17  2001 Chapter 7 bankruptcy.  Pursuant to 11 U.S.C. § 523(a)(1) provides that taxes

18  are non-dischargeable where a return, if required was either (i) not filed, or (ii)

19  filed late and "after two years before the date of the filing of the bankruptcy

20  petition."  All of the taxes at issue in this case fall under one of these two

21  exceptions.

22

23

24  *Summary of Tax Returns for Daniel R. Black*

25

| Year | Filed by Black | Dischargeable | |
| --- | --- | --- | --- |
| 1987 | no | no | §523(a)(1)(B)(i) |
| 1993 | 11/2000 | no | §523(a)(1)(B)(ii) |

26

27

28

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 12**

| 1994 | 11/2000 | no | §523(a)(1)(B)(ii) |
| 1995 | 11/2000 | no | §523(a)(1)(B)(ii) |

*Summary of Tax Returns for Maire E. Black*

| Year | Filed by Black | Dischargeable | |
| --- | --- | --- | --- |
| 1989 | no | no | §523(a)(1)(B)(i) |
| 1993 | 11/2000 | no | §523(a)(1)(B)(ii) |
| 1994 | 11/2000 | no | §523(a)(1)(B)(ii) |
| 1995 | 11/2000 | no | §523(a)(1)(B)(ii) |

*Summary of Tax Returns for Daniel R. Black and Maire E. Black*

| Year | Filed by Blacks | Dischargeable | |
| --- | --- | --- | --- |
| 1996 | 2001 | no | §523(a)(1)(B)(ii) |
| 1997 | 2001 | no | §523(a)(1)(B)(ii) |
| 1998 | 2001 | no | §523(a)(1)(B)(ii) |
| 1999 | 2001 | no | §523(a)(1)(B)(ii) |

Pursuant to 11 U.S.C. § 523(a)(7)(b), penalties assessed with respect to a transaction or event that occurred three years before the date of the filing of the bankruptcy petition are dischargeable, even if the underlying tax is not.  The United States concedes that the Estimated Tax Penalities, Late Filing Penalities, and Failure to Pay Tax Penalties assessed against the Blacks for each of the tax years at issue except 1998 and 1999 were discharged in their bankruptcy because there were triggered by events occurring prior to July 1998, three years before the date of the filing of the Blacks' bankruptcy petition in 2001.[1]

Accuracy penalties were assessed against the Blacks jointly in response to returns they submitted in 2001 for tax years 1996, 1997, 1998, and 1999.  The IRS

---

[1]The Estimated Tax Penalties, Late Filing Penalties, and Failure to Pay Tax Penalties for tax years 1998 and 1999 accrued after July 1998, and are consequently non-dischargeable.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 13**

1    determined that these returns substantially understated the tax they owed.  Because

2    the Blacks' inaccurate returns were filed after July 1998, three years before the

3    date of the filing of the Blacks' bankruptcy petition in July 2001, the Accuracy

4    Penalties for 1996, 1997, 1998, and 1999 are not discharged.

5        This relief affects the personal liability of the Blacks only.  A discharge in

6    bankruptcy prevents the I.R.S. from taking any action to collect the debt as a

7    personal liability of the debtor.  *In re Isom*, 901 F.2d 744, 745 (9th Cir. 1990).  The

8    debtor's property, however, remains liable for a debt secured by a valid lien,

9    including a tax lien.  *Id.*  The bottom line, then, is that while the bankruptcy

10   discharge may have relieved the Blacks of personal liability for certain penalties, it

11   does not invalidate the tax liens securing those penalties, and those liens can still

12   be enforced against the Blacks' prepetition property, such as the Subject Property.

13       *Defendant Hope Springs Arguments*

14       Defendant Hope Spring asserts that the United States has violated 26 U.S.C.

15   § 6320 by failing to notify Hope Springs of the federal tax liens.  Section 6320

16   requires only that notice of federal tax liens be given to the individual who is liable

17   for the tax at issue.  The United States is not required to provide notice to third

18   parties, such as Hope Springs.  *See* 26 U.S.C. §§ 6320(a)(1), 6321.  Defendant's

19   argument that the claim is time-barred because Hope Springs did not receive

20   proper notice of the assessments fails as well because Hope Springs is not

21   personally liable for the taxes at issue.  Likewise, regardless of whether Hope

22   Springs is a tax exempt entity, the United States is not seeking to impose any tax

23   against Hope Springs.

24       Plaintiff is not asserting a state law claim, notwithstanding the fact that state

25   law may be relevant to the ultimate determination of the United States' claim

26   seeking to foreclose federal tax liens on certain real property.  Even so, Plaintiffs

27   are not required to explicitly plead and invoke supplemental jurisdiction.

28

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT
HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 14**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOMINEE / ALTER EGO**

The United States maintains that Hope Springs is the nominee of the Blacks. It also maintains that Hope Springs is the alter ego of the Blacks.

There is no direct statutory authority for nominee lien.  Sections 6321 and 6322 support the creation of federal tax liens; however, they do not refer to nominee liens or the alter ego doctrines.  Nevertheless, it is well-established that the United States may collect a taxpayer's unpaid taxes from the assets of its nominee, instrumentality, or alter ego.  *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-351 (1977).  If the Court finds that Hope Springs is the Blacks' nominee or alter ego, the IRS can properly regard Hope Springs' assess as the Blacks' property subject to the lien under 26 U.S.C. § 6321 and the IRS would be empowered, under § 6331, to levy upon assets held by Hope Springs in satisfaction of the Blacks' income tax liability.  *Id.*

Case law instructs that the court consider the following factors in determining whether a particular entity is a nominee of a taxpayer:

(1) Whether the nominee paid no or inadequate consideration;

(2) Whether the property was placed in the name of the nominee in anticipation of litigation or liabilities;

(3) Whether there is a close relationship between the transferor and the nominee;

(4) Whether the parties to the transfer failed to record the conveyance;

(5) Whether the transferor retained possession; and

(6) Whether the transferor continues to enjoy the benefits of the transferred property.

*See Towe Antique Ford Foundation v. I.R.S.*, 791 F.Supp. 1450, 1454, *aff'd,* 999 F.2d 1387 (9th Cir. 1993); *United States v. Secapure*, 2008 WL 820719 (N.D. Cal. 2008) (noting that courts throughout the Ninth Circuit rely on the *Towe* factors to

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 15**

1   determine nominee status).

2          Washington law determines whether an alter ego exists from whom the

3   Government can satisfy the tax obligation of the tax payer. *Aquilino v. United*

4   *States*, 363 U.S. 509, 512-23 (1960); *Wolfe v. United States*, 806 F.2d 1410, 1411

5   (9th Cir. 1986).  Under this theory, a corporate entity is disregarded when the

6   corporation has been intentionally used to violate or evade a duty owed to another.

7   *Morgan v. Burks*, 93 Wash.2d 580, 585 (1980).  This may occur where the liable

8   party has been "gutted" and left without funds by those controlling it in order to

9   avoid actual or potential liability.  *Id.*

10         Under either theory, it is clear from the facts in this case that the Blacks used

11  the artificial legal entity of the trust to insulate themselves from their tax

12  liabilities.[2]  Here, it is undisputed that the Blacks have retained complete control of

13  the property held by Hope Springs.  Hope Springs paid no consideration to anyone

14  for the parcels of land it received.  Hope Springs was created and purportedly

15  acquired title to the properties shortly after the filing of Notices of Federal Tax

16  Lien regarding the properties.  Both the transferors–B.C. Trust and Summer Hill

17  Freedom Trust– and Hope Springs are wholly controlled by the Blacks.  Hope

18  Springs' office is located in the Blacks' home.  The Blacks controlled the entities

19  that own (Hope Springs), lease, (Summer Hill ) and sublease (Techni-Systems) the

20  properties.  While the Blacks did record the transfers to Hope Springs, they have

21  retained actual possession.  They live and work on the properties since 1981.  They

22  continue to enjoy the benefits of the properties in the same way regardless of who

23

24         [2]In *United States v. Bryce W. Townley, et al* (CV-020384-RHW), the Court
    applied the Washington doctrine of "corporate disregard" or the "alter ego" theory
25  in the context of a trust being used to avoid creditors.  The Court concluded the
    doctrine is applicable where the parties was using the artificial legal entity of a
26  trust to insulate themselves from debt because in that regard, it closely mirrors
    situations where the Washington courts have imposed the doctrine to hold
27  corporations accountable for an individual's liabilities where the facts of the case
    suggest the individual and the corporation are one and the same.
28

1    holds purported title.

2        The Court also notes that the Blacks are vocal advocates of tax avoidance.

3    The transfer to the trusts, and ultimately to Hope Springs, occurred at a time when

4    the Blacks evinced clear intent to stop paying their taxes and avoid IRS collection

5    efforts.

6        The Court finds that there are no material questions of fact and that a

7    reasonable jury could only come to one conclusion–that the Blacks are the true

8    beneficial owners of the properties as a matter of law.  Defendant Hope Springs

9    Corporation Sole is the nominee and/or alter ego of Defendants Daniel R. Black

10    and Maire E. Black, and therefore, to the extent that Defendant Hope Springs

11    Corporation Sole purports to hold title to the Subject Property, it does so as the

12    nominee and/or alter ego of Defendants Daniel R. Black and Maire E. Black.

13                    **FRAUDULENT TRANSFERS**

14        The United States alleges that the transfers to Hope Springs were fraudulent.

15        Under Washington law, transfers of property made with actual intent to

16    hinder, delay, or defraud any creditor is prohibited.  Wash. Rev. Code §

17    19.40.041(a)(1).  To establish fraud, the United States must show actual intent by

18    clear and satisfactory evidence.  Creditors can establish that a transfer was

19    fraudulent if the transfer was made: (1) with actual intent to hinder, delay, or

20    defraud, or (2) without receiving a reasonably equivalent value in exchange for the

21    transfer and the debtor (i) was engaged or was about to engage in a business or a

22    transaction for which the remaining assets of the debtor were unreasonably small in

23    relation to the business or transaction; or (ii) intended to incur, or believed or

24    reasonably should have believed that he or she would incur, debts beyond his or

25    her ability to pay as they became due. A future creditor–creditors whose claims

26    rose after the transfer–must show actual intent to defraud.  § 19.40.051.

27        Actual intent may be established either by direct or circumstantial evidence.

28
**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT
HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 17**

Circumstantial evidence can be used to establish the existence of "badges of fraud." Washington law sets forth the nonexclusive badges or factors the Court may consider in determining the existence of actual intent to hinder, delay, or defraud:

> (1) The transfer or obligation was to an insider;
>
> (2) The debtor retained possession or control of the property transferred after the transfer;
>
> (3) The transfer or obligation was disclosed or concealed;
>
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
>
> (5) The transfer was of substantially all the debtor's assets;
>
> (6) The debtor absconded;
>
> (7) The debtor removed or concealed assets;
>
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
>
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
>
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
>
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Wash. Rev. Code § 19.40.041(b).

Here, the facts reveal that Daniel Black stopped filing income tax returns in 1980. This coincided with the creation of the Summer Hill Freedom Trust, which was under the control of the Blacks and which took nominal title to much of the

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 18**

Subject Property.[3]  The Blacks also created B.C. Trust, another entity under their control, which took nominal title to the remainder of the Subject Property.  The Blacks retained full control and possession of the Subject Property during the time it was purportedly owned by Summer Hill Freedom Trust and B.C. Trust.

The Court finds that the transfers of the subject properties were to an insider. Specifically, the transfers were from the Blacks' nominees/alter egos to another of the Blacks' nominee/alter ego.  The Court finds that the Blacks transferred the Subject Property in anticipation of a collection action and future debts.  In 1999, after the IRS filed Notices of Federal Tax Lien against the Subject Property, the Blacks created Hope Springs, and transferred all their property from their nominee/alter ego trusts (B.C. Trust and Summer Hill Freedom Trust) into its name.  The only reasonable explanation is that each quit-claim transfer took place with the express purpose of shielding assets from tax collection.

According to the Blacks, they own no assets whatsoever.  They have not held property in their own names since 1981.  They received only nominal payments as compensation for the duties they performed for the entities they control.  The record supports the inference that the Blacks attempted to strip any evidence of their ownership of anything of value–by acquiring the Subject Property in the name of nominee/alter ego trusts–at the same time they ceased filing tax returns and were incurring tax liabilities.  When the IRS filed Notices of Federal Tax Lien as to the Subject Property, the Blacks took further efforts to avoid ownership and shield their assets from the IRS by transferring those assets to Hope Springs.  Moreover, no consideration was ever provided for the transfers to Hope Springs.

---

[3]In a previous order, the Court ruled that Summer Hill Freedom Trust and B.C. trust are the nominee and/or alter ego of Daniel and Maire Black (Ct. Rec. 63).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 19**

The Court finds that there is sufficient evidence in the record for a reasonable jury to conclude that the Blacks actually intended to defraud and the transfers of substantially all of the Blacks' assets to Hope Springs in exchange for no consideration rendered the Blacks insolvent. As such, the Court finds that there are no genuine issues of material fact and a reasonable jury could find one conclusion–that is, the transfers of the Subject Property to Hope Springs was fraudulent. As such, the transfers are voidable pursuant to Wash. Rev. Code § 19.40.041(1) and § 19.40.051(a).

## FORECLOSURE OF FEDERAL TAX LIENS

26 U.S.C. § 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

This statute does not create a property right, "but merely attaches consequences, federally defined, to rights created under state law." *United States v. Craft*, 535 U.S. 274, 278 (2002). Courts "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.*, (quoting *Drye v. United States*, 528 U.S. 49, 58 (1999).

As set forth above, the Court finds the Blacks hold a cognizable property right to the Subject Property, and therefore, the federal tax liens attached to the Subject Property are proper and valid.

26 U.S.C. § 7403 provides:

> (a) In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 20**

States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability.

\*\*\*

(c) The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States. If the property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of such lien with expenses of sale, as the Secretary directs.

For the reasons set forth above, foreclosure on the Subject Property is proper.

Accordingly, **IT IS HEREBY ORDERED:**

1.    The United States' Motion for Summary Judgment (Ct. Rec. 121) is **GRANTED**.

2.    The Black Defendants' Motion for Summary Judgment (Ct. Rec. 133) is **DENIED**.

3.    Hope Springs Motion for Summary Judgment (Ct. Rec. 129) is **DENIED**.

4.    Within ten days from the date of this Order, the United States is directed to file a Proposed Judgment that accurately reflects the amount of judgment that should be entered against Defendant Daniel R. Black and Maire E. Black consistent with this Order (less the Estimated Tax Penalties, Late Filing Penalties, and Failure to Pay Tax Penalties for each of the tax years at issue except 1998 and 1999 discharged in bankruptcy).

5.    The United States has valid and subsisting liens in the amount of $4,429,522.78, plus interest accruing after June 1, 2010, pursuant to 26 U.S.C. §§ 6601, 6621 & 6622, and 28 U.S.C. § 1961(c) until paid, on all property and rights

to property belonging to Defendant Daniel R. Black including, without limitation, the Subject Property.

6.    The United States has valid and subsisting liens in the amount of $4,292,181.19, plus interest accruing after June 1, 2010, pursuant to 26 U.S.C. §§ 6601, 6621 & 6622, and 28 U.S.C. § 1961(c) until paid, on all property and rights to property belonging to Defendant Maire E. Black including, without limitation, the Subject Property.

7.    The federal tax liens against Defendant Daniel R. Black and Maire E. Black are foreclosed upon their interest in the Subject Property.  The Subject Property is ordered to be sold and the proceeds from such sale be applied to the United States' liens on all property and rights to property belonging to Defendants Daniel R. Black and Maire E. Black.

**IT IS SO ORDERED.**  The District Court Executive is directed to enter this Order and forward copies to counsel.

**DATED** this 16th  day of July, 2010.


*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge


Q:\CIVIL\2007\Black\sj.wpd

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING THE BLACK DEFENDANTS' AND DEFENDANT HOPE SPRINGS MOTIONS FOR SUMMARY JUDGMENT ~ 22**